CAPITOL INDEMNITY CORPORATION, a Wisconsin Corporation, Plaintiff,

v.

CERTAIN LLOYDS UNDERWRITERS AND/OR LONDON COMPANIES, an unauthorized foreign insurance company, more specifically identified as follows: Spicer-Syndicate No. 898; Mountain-Syndicate No. 855; Groom-Syndicate No. 455—Marine; Merrett-Syndicate No. 418; Moller-Syndicate No. 275; Brooks-Syndicate No. 880; Dugdale-Syndicate No. 89; Hindes-Syndicate No. 266; Alder-Syndicate No. 950; General Aircraft Insurance Co., Ltd., a foreign insurance corporation, and United Reinsurance Consultants, Inc., a New Jersey Corporation, Defendants.

No. 78–C–302.

United States District Court, W. D. Wisconsin.

April 2, 1980.

Bruce Gillman, Tomlinson, Gillman & Travers, Madison, Wis., for plaintiff.

John A. Hansen, Stafford, Rosenbaum, Rieser & Hansen, Madison, Wis., Brendan J. Connoly, Mendes & Mount, New York City, for defendants Certain Lloyds Underwriters & General Aircraft.

Daniel W. Hildebrand, Roy L. Prange, Jr., Ross & Stevens, S. C., Madison, Wis., for defendant United Reinsurance.

## MEMORANDUM AND ORDER

WARREN, District Judge.

There are currently two types of motions pending in this civil case. All of the defendants have moved to dismiss for lack of *in personom* jurisdiction and for failure to state a claim upon which relief can be granted. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332.

Plaintiff seeks in this action to recover amounts paid by it under a policy of insurance issued by plaintiff as reinsurer to defendant Lloyds Underwriters and defendant General Aircraft Insurance Co. as reinsureds. Defendant United Reinsurance Consultants, Inc. (United) acted as a broker. The insurance policies at issue are known in the industry as Total Loss Only Reinsurance Treaties. This reinsurance is underwritten primarily to satisfy reinsurance requirements of marine underwriters, insuring direct hull and machinery risks on vessels, who are liable under their primary policies to pay the face amount of the policy in the event the insured vessel becomes a constructive total loss. Such a loss occurs when the estimated cost of recovering the vessel and repairing the damage caused by an insured exceeds the insured value. Plaintiff issued reinsurance to cover a portion of the eight treaties in suit.

The basis of plaintiff's complaint is that it got "conned" into reinsuring the hulls of certain vessels under the mistaken belief that the underlying insurers had actually insured the hulls and were merely passing off the risk to the various reinsurers. Plaintiff alleges that there was no underlying risk and that the defendants were merely "gambling" that a certain number of airplanes would be lost thereupon obligating plaintiff under the policy. Under several theories, plaintiff claims that it is entitled to recover the amounts paid to defendant reinsureds under the policies. It also seeks relief from defendant United as broker.

Depending upon the defendants' status and purported contacts with Wisconsin, plaintiff relies upon one or the other of the following subsections of the Wisconsin long-arm statute to confer *in personam* jurisdiction over defendants, Wis.Stats. §§ 801.-05(1)(d) or 801.05(4). Rather than discussing the question of personal jurisdiction over each defendant separately, the Court will instead discuss the statutes relied upon by plaintiff and relate it to the appropriate defendant where necessary.

In resolving the issue of personal jurisdiction, the procedure utilized by the Wisconsin Supreme Court appears most expeditious since in a diversity case, this Court must apply the law of the place where it is sitting to obtain jurisdiction over defendants' persons. *See Lakeside Bridge & Steel Co. v. Mountain Construction Co.*, 597 F.2d 596 (7th Cir. 1977); 4 Wright & Miller, Federal Practice & Procedure, § 1068 (1969). The first step involves determining whether the state statute relied upon itself permits an exercise of jurisdiction over the person of defendants. If the state long-arm statute does in fact extend to confer jurisdiction, the Court must determine whether the exercise of personal jurisdiction comports with constitutional due process. *Zerbel v. Federman & Co.*, 48 Wis.2d 54, 179 N.W.2d 872 (1970). This was also the procedure utilized by the court in *Lakeside Bridge & Steel, supra.* The reach of the Wisconsin long-arm statute is, of course, a question of law.

### I. *WIS.STAT. § 801.05(1)(d)*

Under the Wisconsin long-arm statute, a defendant is subject to personal jurisdiction if he "Is engaged in substantial and not isolated activities within this state, whether

such activities are wholly interstate, intra-state, or otherwise." Wis.Stat. § 801.-05(1)(d). According to revision notes following section 801.05, subsection (1)(d) was drawn to correspond with the "doing business" basis for jurisdiction recognized by the Supreme Court in *Perkins v. Benquet Consolidated Mining Corp.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). *See* Foster, Revision Notes to Wis.Stat. § 801.05 at 55–56 (1959). *See also Traveler's Insurance Co. v. McArthur*, 25 Wis.2d 197, 130 N.W.2d 852 (1964).

■ In order to base personal jurisdiction on section 801.05(1)(d), a court must find more than just contacts between the defendant and the forum. Rather, the activity of defendant must have been both "continuous and systematic." *Towne Realty Inc. v. Bishop Enterprises, Inc.*, 432 F.Supp. 691, 694 (E.D.Wis.1977); *Traveler's Insurance Co. v. McArthur*, 25 Wis.2d at 203, 130 N.W.2d 852. In the pleadings, defendant Syndicates underwriting at Lloyd's, London (Lloyd's Syndicates) and defendants General and United are each alleged to have conducted "continuous and systematic" business within Wisconsin. The question for this Court is whether the above named defendants' activities are sufficient to confer jurisdiction under Wis.Stat. § 801.-05(1)(d), because if they have such contacts, these are clearly sufficient to comport with the requirements of due process discussed in *Perkins v. Benguet Consolidated Mining Corp., supra.*

■ Notwithstanding the allegations of plaintiff's complaint to the contrary, the factual record available indicates that the only contacts between General and Wisconsin are those incidental to the insurance contract at issue in this litigation. (Oliver affidavit submitted in support of General's motion to dismiss). Once personal jurisdiction is so challenged, plaintiff bears the burden of showing that the statute relied upon confers jurisdiction. *O'Hare International Bank v. Hampton*, 437 F.2d 1173 (7th Cir. 1971); 5 Wright & Miller, § 1351 at n.33. With respect to defendant General, plaintiff has completely failed to meet its

burden of proving the contacts necessary for General under Wis.Stat. § 801.05(1)(d) and, therefore, this Court must find that jurisdiction over General under this statute is absent.

Defendant United likewise has the same limited contact with Wisconsin. As indicated in the affidavit of Mr. Frederick F. Stiff, III, Manager of defendant United, defendant United's contact with Wisconsin relates solely to the transaction at issue. This unrefuted affidavit establishes that United's contacts are insufficient to subject it to personal jurisdiction in this forum under Wis.Stat. § 801.05(1)(d).

■ Applying section 801.05(1)(d) to defendant Lloyd's Syndicates presents the Court with a much more difficult problem than presented by General's motion. In order to resolve the motion, the nature of the Lloyd's insurance organization must be briefly reviewed.

The insurance seller commonly known as Lloyd's of London, England is not a corporation or business in the same sense as our insurance companies. Lloyd's does not sell insurance and it does not underwrite. Instead, it is a market place wherein certain underwriters meet to conduct their own insurance business. On a common policy of insurance, the insurer is not Lloyd's of London, but instead, it or they are listed as an underwriter or underwriters at Lloyd's, London. (*See, e. g.*, exhibit C–1 attached to the James Carew affidavit of Aug. 27, 1979). One example of a renewal policy furnished by plaintiff shows the insurer as "underwriters at Lloyd's, London" and although the underwriters are not named, it explains that the names and portions of the risk underwritten by them will be supplied if requested. (Exhibit C–2 attached to Carew affidavit). Under the practice used at Lloyd's, "The individual . . . underwriters operate through an underwriting agent, each agent representing, in most cases, a number of underwriters, thus forming various groups known as Snydicates." (*See* Bests Insurance Reports—Property—Casualty for 1979 at 491B attached to the July 31, 1979 affidavit of Bruce Gillman).

It is important to note that Lloyd's of London had a listing in the May, 1979, Milwaukee, Wisconsin telephone directory under that name. (Exhibit D attached to Gillman affidavit of July 31, 1979). The listing is in an advertisement format and states: "Insurance's effected at Lloyd's, London." A local broker is listed in the same advertisement.

In order to confer jurisdiction under 801.-05(1)(d), plaintiff directs attention to the fact that some of the members of the association known as Lloyd's of London do substantial business in Wisconsin. This point is not denied by defendant syndicates. It is also not disputed by the parties that the individual syndicates being sued in this litigation do not have substantial contacts with Wisconsin. The issue presented by the defendant syndicates' motion to dismiss is whether the substantial contacts of Lloyd's of London through several of its member syndicates is sufficient to confer this Court with jurisdiction over the defendant syndicates who individually have insubstantial contacts with Wisconsin.

Apparently, in order to do business in Wisconsin, the association has pooled assets and set up a trust fund in order to qualify as a seller of surplus lines of insurance as that is defined, limited and regulated by Wis.Stat. § 618.41. From this and the policies and advertisement referred to earlier, plaintiff argues that the association known as Lloyd's is the listed insurer. Since Wis. Stat. § 618.41(9)(b) requires all surplus line insurance proposals to state the name and address of all insurers, plaintiff argues that Lloyd's is the insurer because only its name and address and not those of the syndicate are listed on the proposal submitted by plaintiff in opposition to defendant syndicates' motion. The Court must note that while the syndicates' names and addresses are not listed, the proposals do state that such information is available upon request.

Although plaintiff's arguments are forceful, the Court simply is not persuaded that the sales by other syndicates and the representations made by Lloyd's subjects defendant syndicates to personal jurisdiction under Wis.Stat. § 801.05(1)(d). The activities of the other syndicates at Lloyd's cannot subject defendant syndicates to jurisdiction. The facts available to the Court indicate that Lloyd's is merely a place where insurers conduct business much the same as the New York Stock Exchange is with respect to sellers of securities. In addition, the contacts of Lloyd's as an association are too insubstantial. Granted, as an association Lloyd's has taken steps to qualify certain syndicates to sell in Wisconsin. That alone cannot constitute sufficient contacts to subject to jurisdiction here those syndicates not doing business in Wisconsin.

The Court does not want to leave the impression that the conduct of an association as such can never be sufficiently substantial to subject all members to jurisdiction. The key, which is absent here, is an association which as a group wholly and voluntarily holds itself out as conducting business in Wisconsin. In other words, if the association itself holds out that it is doing business, in appropriate circumstances the individual members should be subject to jurisdiction under Wis.Stat. § 801.-05(1)(d). Here, however, the evidence available to the Court indicates that Lloyd's, as an association, does not do business in Wisconsin. Instead, the advertisements, policies and other papers submitted clearly indicate that the insurance is effected *at* Lloyd's.

It is quite possible, though unlikely, that no syndicate at Lloyd's will be subject to jurisdiction under Wis.Stat. § 801.05(1)(d). Nevertheless, as sellers of insurance, they will be within the reach of the Wisconsin long-arm statute and this reach will be clearly constitutional under *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In contrast, the present case involves a buyer of insurance rather than a seller. In the former case, Wisconsin has a greater interest since the very existence of the Wisconsin Insurance Code indicates the strong interest the Wisconsin legislature has in protecting buyers of insurance. This interest was recognized and given effect vis-a-vis jurisdiction-

al contacts and fairness by the Supreme Court in *McGee*.

Consequently, this Court must conclude that Wis.Stat. § 801.05(1)(d) subjects neither defendant syndicates nor defendant General to jurisdiction. The Court must now turn to the question of whether the purchase of insurance by each of the defendant insurers is a sufficient contact to subject them to *in personam* jurisdiction in Wisconsin.

## II. *WIS.STAT. § 801.05(4)*

 Section 801.05(4) confers personal jurisdiction:

> In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either:
>
> (a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or
>
> (b) Products, materials, or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.

This section applies to actions arising out of tortious injuries and is inapplicable to cases involving breach of contract. *Towne Realty, Inc. v. Bishop Enterprises, Inc.*, 432 F.Supp. 691, 692 (E.D.Wis.1977); *Nagel v. Craine Cutler Co.*, 50 Wis.2d 638, 643, 184 N.W.2d 876 (1971). Although defendants argue that this is a contract action and thus Wis.Stat. § 801.05(4) is an inappropriate ground for personal jurisdiction, the Court will assume for purposes of resolving the motions to dismiss that either Wis.Stat. § 801.05(4) or some other subsection of the long-arm statute is applicable. This assumption is certainly reasonable since the Wisconsin long-arm statute "was intended to provide for the exercise of jurisdiction over nonresident defendants to the full extent consistent with requisites of due process of law." *Flambeau Plastics Corp. v. King Manufacturing Co.*, 24 Wis.2d 459, 464, 129 N.W.2d 237, 240 (1964). *See Lakeside Bridge & Steel v. Mountain State Construction Co.*, 597 F.2d at 599. Thus the question for this Court is whether the contacts of the individual defendants with Wisconsin are sufficient to satisfy the "minimum contacts" test first espoused by the Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There the Court held that due process requires only that the defendant have sufficient "minimum contacts" with the forum state so as not to offend "traditional notions of fair play and substantial justice." *Id.* at 316, 66 S.Ct. at 158.

The extent of a state's *in personam* jurisdiction was outlined by the Supreme Court in *McGee v. International Life Insurance, supra*. There the Court held that an out-of-state insurance company was subject to jurisdiction in California even though its only contacts with the state were the mailing of a reinsurance certificate to the California policyholder and the policyholder's payment of the premium by mail. *McGee* is unhelpful to the present inquiry because that case was based in large part on the special nature of insurance which gives a state a strong interest in providing its citizen policyholders with a forum. 355 U.S. at 223, 78 S.Ct. at 201. *See Lakeside Bridge & Steel v. Mountain State Construction Co.*, 597 F.2d at 600 where the court recognized the limits of *McGee*.

The limits of a state's jurisdiction over an out-of-state defendant were further defined by the Supreme Court in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 858 (1958), where the Court stated:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. [*Citing International Shoe Co.*]

Relying upon *Hanson* and the Supreme Court's confirmation of that case in *Shaffer*

*v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), which involved the limits of *in rem* jurisdiction, the Seventh Circuit Court of Appeals outlined the limits of *in personam* jurisdiction in a contract action in their recent opinion in *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., supra.*

In applying *Lakeside* to the present case, it will be helpful to revive the jurisdictional facts underlying the court's holding that the district court sitting in Wisconsin did not have jurisdiction on due process grounds. Plaintiff was a Wisconsin corporation and defendant was a West Virginia corporation. Defendant Mountain State had no contact whatsoever with Wisconsin except for the events which gave rise to the contract at issue in the action. The court further reviewed the facts as follows:

> The contacts between the parties all occurred outside Wisconsin or by interstate mail or telephone. The contract in question called for Lakeside to furnish structural assemblies to Mountain State for use in constructing the outlet works for the Gathright Dam and Reservoir in Virginia. While Mountain State was preparing to bid on that project, it was visited in its offices in West Virginia by Lakeside's agents, who solicited the subcontract for the structural assemblies and left a proposal. After Mountain State had been awarded the contract for the construction of the outlet works, it accepted the proposal by preparing and mailing a purchase order addressed to Lakeside in Milwaukee. Lakeside made a change in the purchase order and returned it to Mountain State, which did not approve the change formally but did so by treating the modified purchase order as effective. Between the initial visit by Lakeside's agents and the return of the purchase order, and presumably afterward, there were telephone conversations between Lakeside in Wisconsin and Mountain State in West Virginia, some place by Mountain State, and there was correspondence between the parties, some mailed by Mountain State.

> The Lakeside proposal, incorporated by reference in the purchase order, provided that the goods were to be supplied by Lakeside "F.O.B. Sellers Plant Milwaukee, Wisconsin with freight allowed to rail siding nearest project site." (The words in capitals were printed; the rest was typewritten.) Nothing was said otherwise about where the goods were to be manufactured.

> Lakeside proceeded to manufacture the goods at its plant in Wisconsin and ship them to a siding near the project site in Virginia, where they were received by Mountain State and incorporated into the construction project. Subsequently Mountain State, asserting that the goods had been found to be defective in certain respects, withheld payment of a part of the purchase price. 597 F.2d at 598.

The court found that these contacts were simply insufficient to confer jurisdiction even though defendant Mountain State may have sent the purchase order to plaintiff in Wisconsin and was aware that plaintiff would perform its obligations under the contract in that state.

In ruling that the above contacts were insufficient to incur jurisdiction, the court noted, among other points, that "The sending of the purchase order to Wisconsin does not significantly aid jurisdiction, especially when it was modified by Lakeside and eventually accepted as modified in West Virginia through Mountain State's acquiescence." *Id.* at 604. Although some contacts thus did exist between defendant Mountain State and Wisconsin, these were too slim. The court found that "Mountain State did not 'purposefully avail itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.' [*Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239]." 597 F.2d at 603.

The contacts between defendant insureds and Wisconsin are quite slim indeed. The insureds contacted brokers in England in order to obtain the needed reinsurance which eventually led representatives of defendant insureds, namely defendant United

Reinsurance Consultants and former defendant Financial Reinsurance, Inc., to contact plaintiff Capitol, among other insurers. The only contacts of United and Financial with Capitol, which appear in the record, were either by the telephone or mail. These contacts were not, however, initiated by Capitol.

In light of the foregoing limited contacts of defendant insureds with Wisconsin, this Court must conclude that it lacks jurisdiction over these defendants. While contracting with the resident of a forum has been held sufficient to support long-arm jurisdiction, *see Simpson Timber Co. v. Great Salt Lake Minerals and Chemical Corp.*, 296 F.Supp. 243 (D.Or.1969); *cf. W. Kraft Corp. v. Terrace on the Park, Inc.*, 337 F.Supp. 206 (D.N.J.1972), this result has been criticized, *see, e. g., Whittaker Corporation v. United Aircraft Corporation*, 482 F.2d 1079 (1st Cir. 1973); *McQuay, Inc. v. Samuel Schlosberg, Inc.*, 321 F.Supp. 902 (D.Minn. 1971); *Geneva Industries, Inc. v. Copeland Construction Corporation*, 312 F.Supp. 186 (N.D.Ill.1970); *Oswalt Industries, Inc. v. Gilmore*, 297 F.Supp. 307 (D.Kan.1969); *cf. In-Flight Devices Corporation v. Van Dusen Air, Inc.*, 466 F.2d 220, 227 n.13 (6th Cir. 1972), and will not be followed by this Court in light of the holding in *Lakeside Bridge, supra.* Such a result not only comports with due process, but also serves practical interests. On this point, the court in *Whittaker* held "the interest of the forum in not discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts undercuts such an expansive interpretation." 482 F.2d at 1085.

This tribunal is well cognizant that defendant insureds reached out and contacted plaintiff in Wisconsin. This contact is simply insufficient to meet due process requirements. *See Hutter Northern Trust Co. v. Door County Chamber of Commerce*, 403 F.2d 481 (7th Cir. 1968); *Buss v. Three Bear Lodge, Inc.*, No. 79–C–350 (E.D.Wis. Dec. 14, 1979). One who merely purchases insurance from an insurer residing in the forum state does not, by the purchase through an intermediary, subject himself to the jurisdiction of the courts of the insurer's state. As indicated, *McGee* held that one sale in the forum state is enough, but that case is limited. A state where an item is sold to its citizens does have jurisdiction when the need for protection is as well recognized as it is with respect to insurance. Here the plaintiff is not only a seller of insurance rather than a buyer, but plaintiff is also a large corporation and thus requires less protection by the sovereign.

In facing defendant United's motion to dismiss for lack of personal jurisdiction, the Court must make note that defendant United did contact Capitol in Wisconsin, albeit not in person, and was instrumental in arranging the reinsurance. In light of *Lakeside Bridge*, however, United's contacts with Wisconsin are inadequate to subject it to jurisdiction here. As stated by the court in *Lakeside*, mere "formalities of contract execution are not determinative for purposes of jurisdiction." 597 F.2d at 604. Here there are admittedly more contacts than those arising out of contract formality. These additional contacts, however, are simply insufficient to support personal jurisdiction over defendant United.

In light of the foregoing, the Court must grant all of the defendants' motions to dismiss.

SO ORDERED.