**FEDERATED RURAL ELECTRIC INSURANCE CORP., Plaintiff–Appellant,**

v.

**INLAND POWER AND LIGHT CO., Defendant–Appellee.**

No. 93–2336.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1994.

Decided Feb. 25, 1994.

William J. Toman, Quarles & Brady, Madison, WI, John F. Runkel, Jr. (argued), Dale E. Fredericks, Bruce D. Celebrezze, David R. Mandelbrot, Sheppard, Mullin, Richter & Hampton, San Francisco, CA, for plaintiff-appellant.

Jeffrey Kassel, Lafollette & Sinykin, Madison, WI, Peter J. Grabicki, Robert T. Carter, Laurel H. Siddoway (argued), Randall & Danskin, Spokane, WA, for defendant-appellee.

Before CUDAHY and FLAUM, Circuit Judges, and SHARP, Chief District Judge.[*]

FLAUM, Circuit Judge.

In this case, Federated Rural Electric Insurance Corporation ("Plaintiff"), an insurer of electric cooperatives, alleged that Inland Power and Light Company ("Defendant"), along with other electric cooperatives located in the Pacific Northwest, engaged in fraud and misrepresentation when it purchased additional insurance and increased the limits on its existing insurance with Plaintiff. Defendant moved the district court to dismiss Plaintiff's suit for lack of personal jurisdiction. The court granted Defendant's motion. Plaintiff now appeals and we affirm, adopting the judgment and reasoning of the district court.

## I. Background

Plaintiff, a Wisconsin corporation (until 1982 when it relocated to Kansas), specialized in providing property and casualty insurance to rural electric cooperatives. Defendant is one of several Pacific Northwest electric cooperatives which purchased directors, officers and managers ("DOM") insurance from Plaintiff in the late 1970's and early 1980's. The instant suit arose from a 1976 transaction in which Defendant was one of 88 parties which executed an agreement to pay a percentage share of the budget of the Washington Public Power Supply System ("WPPSS"), an entity that issued public bonds worth 2.25 billion dollars for the construction of nuclear power plants in Washington. WPPSS ultimately defaulted on these bonds leading to massive litigation by bondholders against Defendant (and others) for fraud and illegal

---

* The Honorable Allen Sharp, Chief District Judge of the Northern District of Indiana, sitting by

designation.

"cost-sharing." Plaintiff claims that Defendant knew that such litigation was imminent when it purchased or increased its DOM insurance from Plaintiff, and Defendant failed to disclose to Plaintiff that the litigation was a virtual certainty. Plaintiff hopes to rescind these policies on the grounds of intentional or negligent fraud and misrepresentation and seeks a declaratory judgment that it is not responsible for any coverage.

On May 17, 1991, Plaintiff filed suit against Defendant and others in the federal district court of Kansas. On January 13, 1993, the District of Kansas dismissed all of Plaintiff's claims against Defendant for lack of personal jurisdiction. On January 25, 1993, Plaintiff filed a single action against the Defendant and others in the Western District of Wisconsin. Defendant, among others, moved to dismiss for lack of personal jurisdiction. The district court granted the motion.

The court noted that although Defendant had purchased insurance from Plaintiff, Defendant was not licensed to do business in Wisconsin, it had no officers or directors in Wisconsin, it did not own property in Wisconsin, and never even solicited any business in Wisconsin.[1] The district court also noted that all of Defendant's insurance contracts with Plaintiff were executed in the Pacific Northwest, either at Defendant's own offices or at the office of Plaintiff's local representative in the Pacific Northwest.[2]

## II. Analysis

Plaintiff argues that personal jurisdiction over Defendant in Wisconsin is consistent with the applicable provisions of both (A) the State's long-arm statute, and (B) the Fourteenth Amendment's due process principles. While we shall address these arguments serially, we note that the district court's decision must be affirmed unless personal jurisdiction is proper under both Wisconsin's long-arm statute and the Due Process clause of the Constitution.

### A. Wisconsin's Long–Arm Statute

■ Ordinarily, under Fed.R.Civ.P. 4(e), a federal court sitting in diversity begins its personal jurisdiction analysis by determining whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 105, 108 S.Ct. 404, 410, 98 L.Ed.2d 415 (1987). The Wisconsin Supreme Court has determined that its long-arm statute is to be liberally construed in favor of the exercise of jurisdiction, *Schroeder v. Raich*, 89 Wis.2d 588, 593, 278 N.W.2d 871 (1979); *International Placement & Recruiting v. Reagan Equip. Co.*, 592 F.Supp. 1252, 1254 (E.D.Wis.1984); *see also Capitol Fixture v. Woodma Distrib.*, 147 Wis.2d 157, 432 N.W.2d 647, 649 (Ct.App.1988). In this case, Plaintiff argues that personal jurisdiction may be obtained over Defendant under either the (1) tort, or (2) contract provisions of the State's long-arm statute. *See* Wis.Stat. § 801.05(3) & (5)(a) (1991).

### 1. Tort Provision

In its argument before the district court the Plaintiff claimed personal jurisdiction ex-

---

1. In fact, according to the district court's findings, Plaintiff's president was soliciting business in the Pacific Northwest and speaking to a trade association of electric cooperatives in 1977 when he met Defendant's general manager, Vincent Slatt. At that meeting, Slatt encouraged Plaintiff to apply for a license to sell insurance in Washington. Plaintiff did so and Defendant purchased its first policy soon after. At a later date, Slatt agreed to serve as a member of Plaintiff's board of directors. In that capacity, Slatt attended 11 meetings, three of which were held in Wisconsin.

2. As reported by the district court, the bulk of questions and negotiations concerning Defendant's policies were directed towards the local representative, although Defendant occasionally made telephone calls to the home office in Wisconsin or sent letters to Wisconsin. Plaintiff's representative visited Defendant's offices every six months to answer questions concerning the policies or to update the policies. Defendants paid its premiums to Plaintiff's office in Wisconsin between 1977 and 1982, when Plaintiff moved its headquarters to Kansas. Some of the defendants below exercised an option contained in their policies to purchase stock from Plaintiff. Part of these defendants' agreement with WPPSS was to back the bonds issued by WPPSS and sold to the public. Some of the persons who purchased the WPPSS bonds were Wisconsin residents. Defendant had no role in issuing or selling these bonds.

isted under either §§ 801.05(3) or 801.05(4) of Wisconsin's long-arm statute.

▉ The tort provision of Wisconsin's long-arm statute grants jurisdiction "[i]n any action claiming injury to person or property within or without this state arising out of an act or omission within this state by defendant." Wis.Stat. § 801.05(3). Plaintiff contends that Defendant's failure to disclose to Plaintiff the substantial likelihood of litigation at the time Defendant purchased or increased its insurance coverage constitutes an act or omission in Wisconsin sufficient to assert jurisdiction under the statute. In response to Plaintiff's argument, Defendant asserts that any act or omission took place in the Pacific Northwest in face-to-face negotiations with Plaintiff's local agent.

Defendant relies heavily on *Lincoln v. Seawright,* 104 Wis.2d 4, 310 N.W.2d 596, 600 (1981). In *Lincoln,* a Wisconsin plaintiff purchased a dog from a New Mexico defendant. The defendant shipped the dog from New Mexico to Wisconsin and wired money to Wisconsin to pay air freight charges. The defendant neglected to warn the plaintiff that the dog was dangerous and had a history of biting children. When the dog arrived in Wisconsin, it bit the plaintiff who then sued the defendant in Wisconsin. The court dismissed the suit and held that neither the wiring of money nor the failure to warn occurred "within this state" for purposes of § 801.05(3). *Id.,* 310 N.W.2d at 601. Thus, in *Lincoln,* the Wisconsin Court held that acts or omissions occurring outside Wisconsin but having consequences that are felt within Wisconsin do not fit within the tort provisions of § 801.05(3). Plaintiff attempts to distinguish *Lincoln* by contending that *Lincoln* merely involved a failure to warn of a physical risk within the forum, whereas the case here involves a defendant who allegedly misrepresented and breached his duty of good faith.

Despite Plaintiff's efforts, we share the district court's view that the differences Plaintiff attempts to draw between *Lincoln* and this case are illusory. The defendant in *Lincoln* had a continuing duty to provide the plaintiff with information concerning dangers and problems associated with the dog for the entire time the dog would be under the control of the plaintiff. Thus, we see no reason why the financial injury here, caused by an act or omission, should receive more protection than the physical injury experienced in *Lincoln.* Indeed, case law reveals the opposite to be true. *See Lakeside Bridge & Steel Co. v. Mountain State Construction Co.,* 597 F.2d 596, 602 n. 11 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980) (declining to exercise jurisdiction over the defendant and stating that Wisconsin courts have a lesser interest in protecting Wisconsin residents in disputes not involving dangers to persons or things within the state's borders). Therefore, we agree with the district court that the tort provision of Wisconsin's long-arm statute, § 801.05(3), does not extend sufficiently far to reach Defendant's conduct.

Plaintiff also contends that § 801.05(4) authorizes personal jurisdiction over Defendant in Wisconsin. Section 801.05(4) of Wisconsin's long arm statute provides that a State court has personal jurisdiction over a defendant if:

> [i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either:

> (a) Solicitation or service activities were carried on within this state or on behalf of the defendant; or

> (b) Products, material or things processed, serviced or manufactured by the defendants were used or consumed within this state in the ordinary course of trade.

Plaintiff argues that because Defendant allegedly engaged in solicitation within the State, § 801.05.(4)(a) provides jurisdiction over Defendant. This alleged solicitation occurred, according to Plaintiff, through Defendant's general manager, Mr. Slatt, who also concurrently served as the manager of Northwest Rural Electric Cooperatives ("Northwest Rural"), an informal trade group consisting of various rural electrical cooperatives located in Idaho, Oregon and Washington. Plaintiff argues that when Slatt asked Plaintiff's CEO to attend a meet-

ing sponsored by Northwest Rural,[3] Slatt in effect solicited services on behalf of Defendant, and thus triggered § 801.05(4)(a).

According to Wisconsin law, before a solicitation triggers § 801.05(4)(a) it must be made by the defendant to the plaintiff, and the defendant must expect some financial benefit. *Pavlic v. Woodrum,* 169 Wis.2d 585, 486 N.W.2d 533, 535 (Wis.App.1992), *Fields v. Peyer,* 75 Wis.2d 644, 250 N.W.2d 311, 316 (Wis.1977). Thus the issue becomes whether the soliciting party that expected a financial benefit from Plaintiff was Defendant or Northwest Rural. The district court found that Plaintiff had failed to carry its burden of demonstrating that Mr. Slatt's encouragement was on Defendant's behalf, rather than on behalf of Northwest Rural. *Federated v. Inland Power,* No. 93–C–072–C, slip op. at 14, 1993 WL 603562 (W.D.Wis. Apr. 27, 1993) (hereinafter *Federated I*"). As the district court reasoned, it is more probable that Plaintiff, on its own initiative, sought to avail itself of the State's insurance market than the Defendant solicited Plaintiff into its service. Since we are in agreement with the district court's finding that Plaintiff has failed to establish a § 801.05(4)(a) solicitation by Defendant, personal jurisdiction under the tort provision of Wisconsin's long-arm statute does not exist in this case.

### 2. Contract Provision

■ The contract provision of Wisconsin's long-arm statute states that jurisdiction is proper in any action which "[a]rises out of a promise, made anywhere to the Plaintiff ... , by the defendant to perform services within this state or to pay for services to be performed in this state by the plaintiff." Wis. Stat. § 801.05(5)(a). In Wisconsin the following minimum contacts must exist before a defendant is subject to jurisdiction under the contract provision:

> (i) a claim arising out of a bargaining arrangement made with the defendant by or on behalf of the plaintiff; (ii) a promise or other act of the defendant, made or performed anywhere, which evidences the

bargaining arrangement sued upon; and (iii) a showing that the arrangement itself involves or contemplates some substantial connection with the state.

*Capitol Fixture,* 432 N.W.2d at 650; *see also* Foster, Revision Notes to Wis.Stat. § 801.05(5) (1959). Here, the parties have agreed that the first two of these elements—that the insurance policies existed, and that the claims being asserted here relate to the policies—have been satisfied. However, to meet the third element, the "substantial connection" requirement, Defendant must contemplate that at least "some" services will occur in Wisconsin. *See Daniel J. Hartwig Assoc., Inc. v. Kanner,* 913 F.2d 1213, 1217 (7th Cir.1990).

In *Hartwig,* we found a sufficient connection with Wisconsin to assert jurisdiction under the contract provision when a defendant had met the plaintiff in Wisconsin, had solicited the plaintiff's services in Wisconsin, and had entered into an agreement with the plaintiff that required the plaintiff to perform significant research in Wisconsin and to travel from Wisconsin on behalf of the defendant. 913 F.2d at 1216. Conversely, in *Management Science, Inc. v. Wilson Mfg. Co.,* 451 F.Supp. 963, 964–65 (E.D.Wis.1978), the Eastern District of Wisconsin declined to assert personal jurisdiction over a defendant who executed a contract in Texas with the Wisconsin plaintiff for computers to be manufactured in Wisconsin and sent to Texas, even though defendant mailed payments for the computers to Wisconsin and sent two employees to Wisconsin to receive computer training by defendant.

In deciding this matter, we agree with the district court in its finding that, under the facts of this case, the contract provision of the long-arm statute, § 801.05(5), does not subject Defendant to personal jurisdiction in Wisconsin. As an initial matter it is uncertain what "services" were performed by Plaintiff in Wisconsin. It is also unclear whether Plaintiff's acts of processing Defendant's policies and claims under the policies

---

3. In 1977, Mr. Slatt asked Plaintiff's CEO to acquaint all Northwest Rural's members with Plaintiff's insurance programs. Slatt also encouraged Plaintiff to become licensed to sell its products throughout the state of Washington. After the meeting with Northwest Rural, Plaintiff assigned a field representative to develop business in the Pacific Northwest.

in its Wisconsin offices constitute "services" at all as contemplated by the insurance contracts. Ultimately, the service provided by insurers such as Plaintiff is liability and defense coverage. Because Defendant engaged in business in the Pacific Northwest only, Plaintiff performed all of these services in the Pacific Northwest rather than in its home office of Wisconsin.

Furthermore, even if Plaintiff did perform services for Defendant in Wisconsin, it is too great a stretch to say that the insurance contracts between Plaintiff and Defendant contemplated "substantial connection" with Wisconsin. *See Capitol Indemnity Corp. v. Certain Lloyds Underwriters,* 487 F.Supp. 1115, 1120 (W.D.Wis.1980) (one who merely purchases insurance from an insurer residing in the forum state does not subject himself to jurisdiction of the state). Defendant conducted the bulk of its negotiations with Plaintiff through Plaintiff's agent in the Pacific Northwest. Plaintiff's agent visited Defendant's offices approximately every six months to discuss Defendant's policies. Occasionally, Defendant directed its questions to Plaintiff's office in Wisconsin through the mails or by telephone. Except for Defendant's general manager, Vincent Slatt, none of Defendant's officers, directors or employees ever set foot in Wisconsin in connection with the insurance policies with Plaintiff. There is only the most tenuous of links between Defendant and Wisconsin through Defendant's purchase of Plaintiff's stock and Defendant's backing of WPPSS bonds, some of which were purchased by Wisconsin residents. Neither of these activities led to "services" in Wisconsin or were "substantial." Therefore, as the district court found, the facts in this case do not satisfy the contract provision of Wisconsin's long-arm statute, § 801.05(5), and thus Plaintiff cannot obtain personal jurisdiction over Defendant under this section.

## B. Due Process

■ Even if Plaintiff were to prevail in its argument concerning the State's long-arm statute, we may conclude that subjecting Defendant to suit in Wisconsin is contrary to principles of due process. Personal jurisdiction will not exist if the unique facts of the dispute do not establish that the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" under the due process clause of the Fourteenth Amendment. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). A state cannot force a nonresident to litigate in its courts unless there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 109, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). A defendant must have derived some benefit from the state to justify being forced to litigate in what is likely to be an inconvenient forum. *Afram Export Corp. v. Mettallurgiki Halyps, S.A.,* 772 F.2d 1358, 1362 (7th Cir.1985).

In determining whether the defendant purposefully availed itself of a particular forum for purposes of the Fourteenth Amendment, courts in this circuit have considered whether the defendant solicited the transaction in question within the proposed forum. *Madison Consulting Group v. State of South Carolina,* 752 F.2d 1193, 1202 (7th Cir.1985); *L.B. Sales Corp. v. Dial Mfg., Inc.,* 593 F.Supp. 290, 295 (E.D.Wis.1984). In *Madison Consulting,* the court held that the defendant purposefully established contacts with Wisconsin by actively soliciting the services of a Wisconsin partnership. *Id.* at 1203.

Here, Plaintiff contends that Defendant's general manager spoke with Plaintiff's president at a meeting and actively encouraged Plaintiff to establish a business presence in the state of Washington. All the parties agree that after an encounter between the two, Defendant purchased its first insurance policy from Plaintiff. However, it is unclear whether at the time the manager was speaking in his capacity as an agent for Defendant or whether he was speaking in his capacity

as president of Northwest Rural Electric Co-operatives. In any case, regardless of who initiated the contact, it is significant that the contact arose in the Pacific Northwest and led to Plaintiff's establishing a business presence in the state of Washington. In effect, the result of Defendant's alleged solicitation was that Plaintiff availed itself of the privilege of conducting business in the state of Washington rather than Defendant or the manager availing itself of the same privilege in the state of Wisconsin.

The district court found that even if Defendant could be found to have purposefully established minimum contacts with Wisconsin, these contacts must be analyzed to determine "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Asahi Metal Industry*, 480 U.S. at 112, 107 S.Ct. at 1032 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). By analogy Plaintiff noted that the Supreme Court of Wisconsin has adopted the following factors to be applied by their state courts when they are evaluating whether an assertion of personal jurisdiction would constitute a due process violation: (1) the quantity of the contacts with the state, (2) the nature and quality of the contacts, (3) the source of the cause of action, (4) the interest of Wisconsin in the action, and (5) the convenience of the parties in trying the matter in Wisconsin. *Zerbel v. H.L. Federman & Co.*, 48 Wis.2d 54, 64–66, 179 N.W.2d 872, 878–79 (1970); *Uni–Bond Ltd. v. Schultz*, 607 F.Supp. 1361, 1366 (E.D.Wis.1985). In support of asserting jurisdiction over Defendant, Plaintiff cites the following contacts: (1) Defendant acquired Plaintiff's stock, as was their option under the policies, during the period that Plaintiff was located in Wisconsin, (2) Defendants sent premium payments to Wisconsin between 1977 and September 1982 when Plaintiff moved its headquarters to Kansas, (3) Defendant backed the sale of WPPSS bonds, some of which were sold to Wisconsin residents, (4) Defendant communicated with Plaintiff's Wisconsin office by phone and by mail, and (5) while in the Pacific Northwest, Defendant's general manager met the Plaintiff's president and encouraged him to apply for a license to sell insurance in the state of Washington.

Despite the significance Plaintiff attaches to these contacts, we are in accord with the district court that such contacts are not sufficient to support the assertion of personal jurisdiction over Defendant consistent with due process. Several courts have held that making telephone calls and mailing payments into the forum state are insufficient bases for jurisdiction. *See, e.g., Lakeside*, 597 F.2d at 604; *Capitol Indemnity Corp.*, 487 F.Supp. 1115; *Royal Globe Ins. Co. v. Logicon*, 487 F.Supp. 1245 (N.D.Ill.1980). Additionally, the purchase of goods or insurance from the forum state alone is an insufficient foundation upon which to assert personal jurisdiction. *See Lakeside*, 597 F.2d at 604 (mailing of purchase order to forum state); *Capitol Indemnity*, 487 F.Supp. at 1121 ("One who merely purchases insurance from an insurer residing in the forum state does not, by the purchase through an intermediary, subject himself to the jurisdiction of the courts or the insurer's state"). Any connection between Defendant and Wisconsin based on Defendant's purchase of stock under the insurance contract or based on Defendant's purchase of WPPSS bonds by Wisconsin residents is far too attenuated to provide a sufficient connection for personal jurisdiction purposes.

Finally, as the district court found, the interests of Wisconsin and the convenience of the parties weigh in favor of declining to assert jurisdiction. Plaintiff no longer has a business presence in Wisconsin, having moved its headquarters to Kansas in 1982. Defendant, all the witnesses, and all documentary evidence are in the Pacific Northwest. Although Plaintiff minimizes Defendant's inconvenience related to defending this suit in Wisconsin, the fact remains that Defendant is a local electric cooperative doing business solely in the Pacific Northwest. Defendant attests to the fact that any forum in the Pacific Northwest would be more convenient than Wisconsin.

Therefore, we find that the contacts cited by Plaintiff are insufficient to confer personal jurisdiction over Defendant in Wisconsin. Defendant provided no services in Wisconsin, conducted all business with Plaintiff in the

Pacific Northwest and dealt primarily with Plaintiff's local agent rather than the main office in Madison. We agree with the district court that forcing Defendant to defend a lawsuit in Wisconsin runs afoul of the Fourteenth Amendment's due process.

### III. Conclusion

For the foregoing reasons we affirm the decision of the district court to dismiss Plaintiff's case for lack of personal jurisdiction.

AFFIRMED.