ENVIROPLAN, INC., Plaintiff,

v.

**WESTERN FARMERS ELECTRIC COOPERATIVE, Defendant.**

No. IP94–2061–C–B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

Sept. 19, 1995.

Sue Figert Meyer, Rubin & Levin, P.C., Indianapolis, Indiana, for plaintiff.

Mark A. Palmer, Gretchen L. Doninger, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, Indiana, Stephen G. Solomon, Tamara Beam Cain, Derryberry, Quigley, Parrish, Solomon & Blankenship, Oklahoma City, Oklahoma, for Defendant.

## ENTRY

BARKER, Chief Judge.

Defendant Western Farmers Electric Cooperative ("Western Farmers") moves to dismiss this cause of action for lack of personal jurisdiction, improper venue, forum non conveniens, and failure to state a claim, or in the alternative to transfer the case to the Western District of Oklahoma. The Court denies Defendant's motion in its entirety.

### I. FACTUAL BACKGROUND

This diversity action is for breach of contract. Western Farmers is an Oklahoma cooperative that generates and distributes

electricity to cooperative members in Oklahoma. (Def.'s Mot. to Dismiss at 1) Plaintiff Enviroplan, Inc. ("Enviroplan"), is a New Jersey corporation with places of business in Roseland, New Jersey, and in Indianapolis, Indiana. (Complaint ¶ 1) Western Farmers solicited bids for the design, manufacture, and installation of a so-called Continuous Emission Monitoring System ("CEMS") and a so-called Data Acquisition System ("DAS") at Western Farmers' headquarters in Anadarko, Oklahoma, and at its electrical generating plants in Mooreland and Hugo, Oklahoma. (Def.'s Reply at 5) The two systems would be designed to collect emission discharge from the stacks at Defendant's Oklahoma plants, to analyze the emissions, to log the data results, to transmit the data from the plants to Defendant's headquarters, and to generate an emissions data report for transmittal to the U.S. Environmental Protection Agency and the Oklahoma Department of Environmental Quality. (Def.'s Reply at 5) Western Farmers solicited a bid from Enviroplan and on May 24, 1993 entered into a contract with Enviroplan ("the Contract") under which the New Jersey corporation would design, manufacture, and install both systems. (Complaint ¶¶ 4, 5) The contract price was $572,978. (Complaint, Exhibit A at 8A)

Enviroplan now alleges that it has fully performed under the terms and conditions of the Contract by providing all goods and services required thereunder, and that Defendant has breached the Contract by having failed to pay an amount of $126,450.38 plus interest after Plaintiff demanded such payment. (Complaint ¶¶ 4, 7, 10, 11)

## II. PERSONAL JURISDICTION

### A. Standard of Review

A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant only if a court of the state in which the district court sits would have such jurisdiction. *Nucor v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 580 (7th Cir.1994); *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1243 (7th Cir.1990), *cert. denied*, 499 U.S. 947, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991); Fed. R.Civ.P. 4(e) (A federal court sitting in diversity can exercise personal jurisdiction only so far as allowed by the law of the state in which it sits). In the case of a defendant foreign corporation that is not generally doing business in Indiana, an Indiana court may exercise personal jurisdiction over the defendant where both of the following obtain: (1) Indiana's long-arm statute authorizes the exercise of such jurisdiction; and (2) exercise of such jurisdiction complies with the due process clause of the fourteenth amendment to the United States Constitution. *Nucor*, 28 F.3d at 580; *Wilson*, 916 F.2d at 1243. In the case of Indiana's long-arm statute, the twin inquiries collapse into a single due-process inquiry, because the scope of Indiana's long-arm statute, Trial Rule 4.4(A), has been deemed to extend the State's personal jurisdiction to the constitutional limit.[1] *Wilson*, 916 F.2d at 1243; *Oddi v. Mariner–Denver, Inc.*, 461 F.Supp. 306, 308 (S.D.Ind.1978). *See also Brokemond v. Marshall Field & Co.*, 612 N.E.2d 143, 145 (Ind.App.1993). Thus, we analyze whether personal jurisdiction over Defendant is permissible solely with regard to the due process clause.

The due process clause protects a defendant from being subject to binding judgments of a forum with which the defendant has established no meaningful "contact, ties or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). The Supreme Court has construed the due process clause to entitle a person to "fair warning" as to what conduct will subject the person to a foreign jurisdic-

---

1. Indiana's long-arm statute provides in part: **A) Acts Serving as a Basis for Jurisdiction.** Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

    (1) doing any business in this state;

    \* \* \* \* \* \*

tion. *Shaffer v. Heitner,* 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J. concurring in judgment). The Supreme Court has stated that a defendant receives such "fair warning" so as to be amenable to specific jurisdiction of a foreign court where the defendant engages in some purposeful or deliberate activity effecting the forum, and where the litigation results from injuries that "arise out of or relate to" those activities.[2] *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182. The necessary contacts may not result solely from the unilateral activity of the plaintiff. Instead personal jurisdiction exists where the defendant "purposefully direct[s]" his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984); where the defendant engages in "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); and where the defendant "deliberately" engages in significant activities within the forum state that create a "substantial connection" with the forum, *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985). *See Nucor v. Aceros Y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 580 (7th Cir.1994) (using "purposeful availment" wording as standard test for specific jurisdiction). This requirement of some deliberate or purposeful conduct or availment on the defendant's part ensures that a defendant will not be hailed into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183 (quoting respectively *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984); and *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299, 100 S.Ct. 559, 568, 62 L.Ed.2d 490 (1980)). In evaluating contract actions, the Supreme Court has rejected a rigid, mechanical test for determining personal jurisdiction.

> Instead, we have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 479, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985).

█ In determining what constitutes sufficient contact with a forum to allow a court to exercise personal jurisdiction, a court must examine the facts and circumstances on a case by case basis. *See Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1143 (7th Cir.1975). The court may consider affidavits and other documents outside the pleadings in reaching its decision on jurisdiction, *see Nelson by Carson v. Park Indus., Inc.,* 717 F.2d 1120, 1123 (7th Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984), but must construe all facts concerning jurisdiction in favor of the non-movant, including disputed or contested facts. *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1215 (7th Cir.1984).

### B. Analysis

Plaintiff asserts that this Court has personal jurisdiction over Defendant because Defendant has significant contacts with the Southern District of Indiana. Enviroplan

---

**2.** Plaintiff implicitly argues that the Court has specific jurisdiction over Western Farmers because Plaintiff bases its jurisdictional argument on Indiana's long-arm statute. Whenever a court relies on a long-arm statute to establish jurisdiction, the court is exercising specific jurisdiction. Where a cause of action does not arise out of or relate to a defendant's activities in a forum, a court may still exercise general jurisdiction over the defendant if the defendant has "continuous and systematic" contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984).

manufactures CEMS equipment at its facility in Indianapolis, Indiana, by purchasing manufactured components and then by designing and manufacturing a finished product. (Affidavit of Christopher Farrell at 2) Plaintiff alleges that representatives of Western Farmers traveled to Indianapolis, which is located in this district, on matters related to the Contract on two occasions. First, Western Farmers manager Richard Bogers traveled to Enviroplan's Indianapolis facility in August 1993 to discuss Enviroplan's alleged failure to meet contract deadlines. (Plaint.'s Br. in Opp. at 1; Affidavit of Richard Bogers ¶ 9) Bogers was a Western Farmers' environmental specialist who was responsible for the CEMS project management, bid selection, design, installation, certification, and operation. (Affidavit of Ray Walters, Attachment B) This first visit alone might not be a sufficient contact to support jurisdiction, because, arguably, this contact does not evince a deliberate or purposeful enough act to qualify as "fair warning" that Defendant would be subjecting itself to jurisdiction in Indiana. However, it is equally arguable that Defendant would clearly have foreseen delays in a project the size of the CEMS and the DAS, which would have necessitated the kind of negotiations that occurred here.

■ Whatever sufficiency the first visit may have lacked, we believe the second visit in December 1993 clearly establishes minimum contacts. At that time a group of four Western Farmers employees spent approximately one week in Indianapolis to participate in a factory acceptance test of CEMS and DAS equipment at Plaintiff's plant and to participate in Enviroplan's CEMS and DAS training program. (Plaint.'s Br. in Opp. at 2; Affidavit of Thomas W. Surfus ¶ 10; Bogers Aff. at ¶ 9) Defendant admits to both visits. (Def.'s Mot. to Dismiss at 5) The visiting group that came to Indianapolis was comprised of high-level Western Farmers personnel, including Richard Bogers, environmental supervisor Gerald Butcher, and two supervisors. (Bogers Aff. ¶ 9; Walters Aff. Attachment B) Defendant describes Butcher's responsibilities as consisting of "contract negotiations, bidding, project start, project scheduling, factory acceptance visit, installation of hardware, discussions on software, [and] negotiations with Enviroplan President & V.P. upon their lack of response to contract violations." (Walters Aff. Attachment B) Defendant admits that "[i]t is common practice within the industry for the purchaser of the air quality system to witness the factory acceptance test before the system is installed on site." (Def.'s Reply at 4) Plaintiff further alleges that the Western Farmers representatives prepared notes during their time in Indianapolis as to what Enviroplan would need to correct or to complete before shipping the CEMS to Oklahoma. (Plaint.'s Br. in Opp. at 3; Surfus Aff. ¶ 10) The Court finds that because of the length of the group's time in Indianapolis, the seniority of those in the Western Farmers group, and the interactive role taken by the group in both critiquing the equipment and in receiving systems training, Defendant's contacts with this forum are in no way "random," "fortuitous," or "attenuated." Instead, it is clear that Western Farmers purposefully availed itself of the benefit of conducting business in the forum.

The Seventh Circuit has found personal jurisdiction to exist in cases where a defendant had lesser contacts with the forum than Western Farmers has established with this forum. In *Nucor v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572 (7th Cir.1994), the Seventh Circuit held that a district court properly exercised jurisdiction over a defendant foreign corporation where the defendant's only contact with the forum was the visit by its president to negotiate a contract, which the district court subsequently declared unenforceable. As the court reasoned, "[b]y its conduct Aceros had purposefully availed itself of the privilege of conducting business in Indiana; by that same conduct it invoked the benefits and protections of the laws of Indiana." *Id.* at 580–81. *See also Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215–16 (7th Cir.1984) (holding that discussions in Illinois leading to contract sufficient for specific jurisdiction); *Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189, 1193 (7th Cir.), *cert. denied*, 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980) (holding that personal jurisdiction existed where employee of defendant came to forum

for lunch meeting, and meeting constituted bulk of negotiations that led to formation of contract); *Wisconsin Electrical Manufacturing Co., Inc. v. Pennant Products, Inc.*, 619 F.2d 676, 677 (7th Cir.1980) (holding that personal jurisdiction over nonresident defendant existed where agents of defendant made two visits to forum that were significant in formation of contract). While the visits to this forum by the Western Farmers group involved negotiations relating to performance under the Contract, rather than leading to the formation of the Contract, the Court determines that to be an immaterial distinction and concludes Defendant's visits constituted minimum contacts. A party purposefully avails itself of the laws and benefits of a forum state no less when it is engages in the kind of activities the Western Farmers group undertook in Indianapolis than when it engages in pre-contractual negotiating in a forum office or hotel. Pre-contractual negotiations as well as visits necessitated by issues relating to performance of the Contract represent significant aspects of the parties' overall business relationship. And Western Farmers' participation in the factory acceptance test was a contemplated future consequence of the Contract. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985).

Finally, Plaintiff has alleged that Western Farmers employees made telephone calls and sent letters and memoranda and at least one facsimile transmission into Indiana (Plaint.'s Br. in Opp. at 2; Surfus' Aff. ¶¶ 3–9, 11, 12) While there is some dispute over the number of actual communications between Defendant in Oklahoma and Plaintiff in Indiana, quantifying these contacts is not in itself dispositive. It is true that the Court would be wary of basing personal jurisdiction solely on such communications. *See, e.g., Federated Rural Electric Insurance Corp. v. Inland Power and Light Co.*, 18 F.3d 389, 395 (7th Cir.1994) (citing cases) These contacts, however, further support an assertion of personal jurisdiction when considered in light of Defendant's actual visits to the forum.

Defendant's contention that it is not subject to the Court's personal jurisdiction because, among other reasons: (1) Enviroplan initiated the parties' business relation in Oklahoma by soliciting Western Farmers' business; (2) Defendant drafted both its CEMS and DAS bid documents and the resulting Contract in Oklahoma; (3) the Contract was executed in Oklahoma; (4) the Contract called for performance in Oklahoma in the form of Enviroplan's installation of the CEMS and DAS; and (5) the CEMS and DAS installation was an improvement to real property in Oklahoma (Def.'s Mot. to Dismiss at 2–4; Bogers Aff. ¶¶ 1–5; Affidavit of James D. Pendergrass ¶ 4; Walters Aff. ¶ 2), rely on the kind of mechanical contract interpretation that the Supreme Court rejected in *Burger King*.

Examining the Plaintiff's and Defendant's actual course of dealing, the Court finds that subjecting Western Farmers to its jurisdiction would not offend traditional notions of fair play and substantial justice. It would be disingenuous for Defendant to claim that it was a mere passive purchaser of services from an out-of-state vendor and that it could not foresee being haled into this forum. Defendant entered into a contract for the manufacture and installation of environmental monitoring systems costing more than half a million dollars. (Complaint, Exhibit A, at 8A) Defendant admits that it has had dealings, if not contractual relations, with Plaintiff on numerous occasions during the past few years. It was Defendant that requested bids for an environmental monitoring system and Defendant that selected the bid of an out-of-state corporation. Defendant further admits that it acted as scrivener in drafting the bid documents and the Contract. (Def.'s Mot. to Dismiss at 4) Defendant may have hoped to structure its relationship with Plaintiff so as to avoid subjecting itself to the jurisdiction of a foreign court, but, in traveling to Indiana and in working in Indiana under the terms of the Contract, Defendant has subjected itself to the jurisdiction of this Court.

Having concluded that Western Farmers purposefully availed itself of the benefits and protections of Indiana law and that Western Farmers reasonably would have anticipated being haled into this forum to resolve the instant dispute, this Court's assumption of

jurisdiction over Defendant comports with due process, and the motion to dismiss on personal jurisdiction grounds is denied.

### III. VENUE

The Court next addresses Defendant's motion to dismiss for improper venue. Venue in a diversity case is controlled by 28 U.S.C. § 1391(a), which states that in a diversity action venue is proper only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or

> (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Turning first to clause (2), Defendant argues that venue is improper in the Southern District of Indiana because the Contract at issue was "negotiated, drafted, entered and to be performed in Oklahoma." (Def.'s Reply Brief at 7) Thus, Defendant argues, under 28 U.S.C. § 1391(a)(2) a substantial part of the events or omissions giving rise to the action occurred in Oklahoma rather than in Indiana. Defendant appears to contend that venue in Indiana is improper because venue is proper in Oklahoma, or stated otherwise, that venue is only proper in one district. This argument consistently has been repudiated. As another federal district court explained:

> Section 1391 was amended in 1990. Under the previous statute, venue was proper in the district "in which the claim arose," and was usually limited to only one judicial district. The revised statute allows for venue in any district in which a substantial part of the events or omissions giving rise to the claim occurred. Thus, venue can be proper is several districts.

*Key Industries, Inc. v. O'Doski, Sellers & Clark,* 872 F.Supp. 858, 864–65 (D.Kan.1994) (citations omitted). *See also Sacody Technologies, Inc. v. Avant, Inc.,* 862 F.Supp. 1152, 1157 (S.D.N.Y.1994) ("The amendment [to section 1391] evinces Congress' intent

that venue may be proper in more than one federal district in a given case"); *Chemical Waste Management, Inc. v. Sims,* 870 F.Supp. 870, 875 (N.D.Ill.1994) ("venue is proper in the Northern District of Illinois notwithstanding the possibility that defendants' activities may have been more substantial elsewhere"); Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3806 (Supp.1995) ("Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred").

■ The plain meaning of the section leads the Court to conclude that venue in the Southern District of Indiana is proper. A review of the facts of the controversy establishes the statutorily required nexus with this forum. Plaintiff alleges that a substantial part of the events giving rise to this dispute occurred in Indianapolis. Plaintiff alleges that it expended 45% of its labor in performing the Contract at its Indianapolis facility, specifically in the design and manufacture of the CEMS, and expended the balance of its labor nearly equally on tasks relating to software customization in New Jersey and certification and support work in Oklahoma. (Surfus Aff. ¶¶ 2, 13) Caselaw from other jurisdictions supports this finding. *See, e.g., Sacody Technologies, Inc. v. Avant, Inc.* 862 F.Supp. 1152, 1157 (S.D.N.Y.1994) (venue was proper in suit for breach of confidentiality agreement where the agreement was transmitted from and to manufacturer's offices within the district); *National Cathode Corp. v. Mexus Co.,* 855 F.Supp. 644, 648 (S.D.N.Y.1994) (suit by a New York corporation against a Massachusetts corporation for, among other things, breach of contract was properly venued because defendant's representative attended a trade show in the forum).

Even if Plaintiff could not satisfy the provision relating to where a substantial part of the events or omissions occurred, Plaintiff can still satisfy clause (1) of 28 U.S.C. § 1391(a), also excerpted above. Clause (1) allows venue in "a judicial district where any defendant resides, if all defendants reside in the same State." (*Id.*) Defendant resides in

this district because, as the Court has previously determined, it is subject to personal jurisdiction here and was so subject when Plaintiff commenced this action. The Court bases its conclusion regarding Defendant's residence on section 1391(c), which states in part as follows:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district ... such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State....

28 U.S.C. § 1391(c). Thus the Court concludes that venue in this district is proper under 28 U.S.C. § 1391(a)(1) and 28 U.S.C. § 1391(c). *See Bohler–Uddeholm Corp. v. Cloeren Co.,* 1995 WL 106473, *3 (N.D.Ill. March 9, 1995); *WPC Machinery Corp. v. Periodical Graphics, Inc. et al.,* 1994 WL 643249, *3 (N.D.Ill. Nov. 9, 1994) (dictum); *Heller Financial, Inc. v. Summit Bank of Indianapolis,* 1992 WL 178651, *4 (N.D.Ill. July 16, 1992). Having concluded that jurisdiction is proper under the first two provisions of section 1391(a), the Court need not address the third option which applies only "if there is no district in which the action may otherwise be brought."

## IV. FAILURE TO STATE A CLAIM

■ Defendant's next contention is that Plaintiff has failed to state a claim upon which relief can be granted. It, too, is without merit. In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all facts alleged, together with all reasonable inferences which may be derived from those facts. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974);

*Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir.1991). Dismissal is proper only if it appears beyond a doubt that a plaintiff can prove no set of facts that would entitle it to the requested relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Prince v. Rescorp Realty,* 940 F.2d 1104, 1106 (7th Cir.1991).

■ Defendant argues that it does not owe Plaintiff any payment under the terms of the Contract because "the invoices [pursuant to which Plaintiff seeks to collect] were not approved for payment as required by Article III of the Contract."[3] (Def.'s Mot. to Dismiss at 12) In its Complaint, however, Plaintiff alleges that "Defendant has inspected and accepted the equipment and systems provided under the Contract, and has been using the equipment and systems." (Complaint ¶ 9) Plaintiff further asserts that the CEMS and the DAS were properly installed at Defendant's plants and headquarters and were certified in accordance with U.S. Environmental Protection Agency standards. (Surfus Aff. ¶ 14) The Court concludes that the parties' dispute necessitates too great a factual inquiry to be determinable as a matter of law. Therefore the Court cannot conclude that the Complaint, taken as true, would entitle Plaintiff to none of the relief requested.

## V. FORUM NON CONVENIENS or TRANSFER

■ Last, Defendant argues that even if Plaintiff's suit is properly venued in the Southern District of Indiana, the Court should either dismiss the case on the grounds of forum non conveniens or transfer the case pursuant to 28 U.S.C. § 1404(a) to the Western District of Oklahoma. Before addressing either of these issues, the Court must distinguish the doctrine of forum non conveniens from the statutory transfer provision. Both the doctrine and the statute apply to situations in which a suit is properly venued but

**3.** Section 1.1 of Article III of the contract states: Milestone payments shall be made in accordance with the milestone schedule identified in Section 1.2 and payments shall not become due prior to the completion and acceptance by Owner of each milestone. No payment shall be made until all tasks associated with a milestone have been completed, unless the completion of such task is waived by [Western Farmers Electric Cooperative].
(Complaint, Exhibit C).

where there is clearly a more convenient forum. Where the more convenient forum is another federal district, a district court should transfer the suit to that other district. Accordingly, a district court should dismiss a suit on the grounds of forum non conveniens only where the clearly more convenient forum is a state court, a territorial court, or a foreign court. *See American Dredging Co. v. Miller,* —— U.S. ——, —— n. 2, 114 S.Ct. 981, 986 n. 2, 127 L.Ed.2d 285 (1994) (As a consequence of federal venue transfer statute, federal doctrine of forum non conveniens has continuing application only in cases where alternative forum is abroad); Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3828 (1986) ("It is only when the more convenient forum is in a foreign country—or perhaps, under rare circumstances, in a state court or a territorial court—that a suit brought in a proper federal venue can be dismissed on grounds of forum non conveniens"). Because Defendant argues that there is a more convenient forum to which the Court could transfer the case pursuant to 28 U.S.C. § 1404(a), namely the Western District of Oklahoma, the Court denies Defendant's motion to dismiss on the grounds of forum non conveniens.

The Court now addresses the propriety of transferring the suit under section 1404(a). A party seeking transfer pursuant to this section must establish: (1) that venue is proper in both the transferor court and the transferee court, and (2) that the transfer is for the convenience of the parties and witnesses and in the interest of justice. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 n. 3 (7th Cir.1986); *K & F Mfg. Co., Inc. v. Western Litho Plate & Supply Co.,* 831 F.Supp. 661, 664 (N.D.Ind.1993); *Heller Financial, Inc. v. Riverdale Auto Parts, Inc.,* 713 F.Supp. 1125 (N.D.Ill.1989). The movant bears the burden of showing that the transferee court is clearly more convenient. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219–20 (7th Cir.1986); *K & F Mfg. Co., Inc. v. Western Litho Plate & Supply Co.,* 831 F.Supp. 661, 664 (N.D.Ind.1993); *Heller Financial, Inc. v. Riverdale Auto Parts, Inc.,* 713 F.Supp. 1125 (N.D.Ill.1989). Where transfer merely would shift convenience (and conversely, inconvenience) from one party to another, transfer should not be granted. *K & F Mfg. Co., Inc. v. Western Litho Plate & Supply Co.,* 831 F.Supp. 661, 664 (N.D.Ind. 1993).

In support of its motion to transfer this case to the Western District of Oklahoma, Defendant states that "the majority of witnesses are located in Oklahoma." (Def.'s Mot. to Dismiss at 11) Defendant states that it expects to require the testimony of at least ten fact witnesses who reside in Oklahoma and two fact witnesses who reside in Texas. (Walters Aff. ¶ 5) The Oklahoma fact witnesses are Western Farmers employees and include an environmental specialist, a project director, an instrument and electrical supervisor, an instrument technician, an instrument and control supervisor, a systems operations supervisor, and a project engineer. (Walters Aff. Attachment B) One of the Texas witnesses is president of a company that allegedly "[s]truggled for payment for work performed for Enviroplan." (*Id.*) Defendant also has identified as a witness an air quality engineer with the Oklahoma Department of Environmental Quality. (*Id.*) Defendant also asserts that expert witnesses and possibly jurors may need to view the CEMS equipment in Oklahoma. (Def.'s Reply at 9) Enviroplan, on the other hand, asserts that it may call as witnesses as many as six current or past Enviroplan employees who reside in Indianapolis or elsewhere in Indiana. (Affidavit of Christopher Farrell ¶¶ 3, 4) These witnesses would include a vice president, a service engineer, a service project manager, and a service manager. (*Id.*) The Court is not persuaded that justice will be ill served unless every witness that Defendant has identified actually testifies at trial. Nor is it significant that the CEMS is located in Oklahoma. Nor does testimony from a former contractor for Enviroplan or from a state engineer appear relevant to a private contract dispute.

Finally, Defendant states that "it would appear that Oklahoma has a greater interest than Indiana in the outcome of this litigation" because the Contract will be interpreted according to Oklahoma law and because the rules requiring monitoring of plant emissions

are enforced by an Oklahoma administrative agency. (Def.'s Reply at 8). This suit, however, is not for the enforcement of an Oklahoma state regulation. The Court believes that in a private contract dispute between residents of Oklahoma and Indiana, neither state has a greater interest in the outcome. Nor is the possibility that Oklahoma contract law will apply to this dispute a sufficient reason to deny the Plaintiff its choice of forum. The Court therefore finds that transferring venue to the Western District of Oklahoma would be just as inconvenient to Plaintiff as it would be convenient to Defendant. Accordingly, Defendant has not borne its burden of establishing that the Western District of Oklahoma would be clearly more convenient.

## VI. CONCLUSION

For the reasons stated above, Western Farmers' motion to dismiss on the grounds of lack of personal jurisdiction, improper venue, forum non conveniens, and failure to state a claim, or in the alternative to transfer venue to the Western District of Oklahoma, is denied in its entirety.

It is so ORDERED.