**HARLEY–DAVIDSON MOTOR COMPANY, Plaintiff,**

v.

**MOTOR SPORT, INC., Defendant.**

No. 96–C–1038.

United States District Court, E.D. Wisconsin.

April 15, 1997.

---

Peter J. Stone, Foley & Lardner, Milwaukee, WI, for plaintiff.

Russell M. Lein, K. Scott Wagner, Hale & Lein, Milwaukee, WI, for defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

The plaintiff, Harley–Davidson Motor Company, filed this diversity action on September 10, 1996, asking for a declaratory judgment that Harley–Davidson has not violated its distributorship agreement with the defendant, Motor Sport, Inc., that Harley–Davidson has not violated any duties or responsibilities it may have toward Motor Sport, and that Harley–Davidson's relationship with Motor Sport is non-exclusive. Motor Sport subsequently filed a motion to dismiss pursuant to Rules 12(b)(2), (3) & (6), Federal Rules of Civil Procedure; it is this motion to dismiss that is presently before the court.

In support of its motion, Motor Sport has submitted two affidavits of Jose Fossas, the president of Motor Sport. Harley–Davidson has submitted the affidavit of Darrell Fink, the director of "Latin American Operations" for Harley–Davidson.

### I. Factual Background

Harley–Davidson, a manufacturer, distributor, and seller of motorcycles and motorcycle parts, is a Wisconsin corporation with its principal place of business in Milwaukee. (Fink aff. ¶ 2.) Motor Sport, a corporation formed under the laws of Puerto Rico, distributes and sells manufactured brand products in Guaynabo, Puerto Rico. (First Fossas aff. ¶ 2.) Among the products sold by Motor Sport are Harley–Davidson motorcycles, parts, and accessories. (First Fossas aff. ¶ 3.) Motor Sport began to sell Harley–Davidson products in or about 1975. (Fink aff. ¶ 3; First Fossas aff. ¶ 3.) The last writ-

ten agreement regarding the distribution relationship between Harley–Davidson and Motor Sport expired on December 31, 1981. (First Fossas aff. ¶ 4.) The parties have nevertheless continued to do business until the present day. (First Fossas aff. ¶ 4; Fink aff. ¶ 5.) All terms and negotiations regarding the distribution relationship between Harley–Davidson and Motor Sport have been executed in Puerto Rico. (First Fossas aff. ¶ 7.)

Motor Sport, when ordering Harley–Davidson products, submits its orders to the plaintiff's office in Milwaukee. (Fink aff. ¶ 7.) Harley–Davidson's Wisconsin employees and employees of Motor Sport, in connection with these orders, communicate through the telephone, facsimile, and mail. (Fink aff. ¶ 7.) The engines, transmissions, and parts for each of the Harley–Davidson motorcycles sold by Motor Sport are manufactured at Harley–Davidson plants in Tomahawk, Wauwatosa, and Milwaukee, Wisconsin. (Fink aff. ¶ 7.) The motorcycles are subsequently assembled in York, Pennsylvania and shipped to Motor Sport in Puerto Rico. (Second Fossas aff. ¶ 8; Fink aff. ¶ 7.)

Harley–Davidson prepares and mails its invoices for Motor Sport products in Milwaukee. (Fink aff. ¶ 8.) Until 1997, Motor Sport sent its payments for new motorcycles to Harley–Davidson in Milwaukee, and Harley–Davidson deposited these payments in bank accounts maintained in Wisconsin. (Fink aff. ¶ 8; Second Fossas aff. ¶ 11.) Motor Sport and its customers submit sales and warranty registration forms for new motorcycles, in addition to warranty claims for reimbursement, to Harley–Davidson in Milwaukee. (Fink aff. ¶ 9.) Harley–Davidson's Wisconsin office processes these forms and claims. (Fink aff. ¶ 9.) Harley–Davidson has provided 90–day financing and cooperative advertising on behalf of Motor Sport. (Fink aff. ¶ 11.) These programs are initiated at Harley–Davidson's headquarters in Milwaukee. (Fink aff. ¶ 11.) Harley–Davidson did not grant any cooperative advertising to Motor Sport during 1996. (Second Fossas aff. ¶ 12.)

Employees at Harley–Davidson's Wisconsin office and Motor Sport employees communicate about other matters, including forecasting and market potential. (Fink aff. ¶ 7.)

Harley–Davidson's Wisconsin office also faxes or mails monthly credit reports to Motor Sport; each report generates one or two contacts between Motor Sport and Harley–Davidson in Wisconsin. (Fink aff. ¶ 8.) Not all communications between the defendant and the plaintiff, however, are with Harley–Davidson's Milwaukee office. Motor Sport has also had contact with Harley–Davidson's Connecticut, Florida, and Brazil offices. (Second Fossas aff. ¶ 7.)

In 1995 and 1996, Motor Sport's purchases of Harley–Davidson products totaled approximately $1,000,000 each year. (Second Fossas aff. ¶ 9.) In 1996, Harley–Davidson received orders in Wisconsin from Motor Sport for parts and accessories in the amount of $154,420.24; in 1995, Harley–Davidson received orders in Wisconsin from Motor Sport in the amount of $133,768.30. (Fink aff. ¶ 12.) These parts and accessories were invoiced and shipped in Wisconsin. (Fink aff. ¶ 12.) The remaining balance of Motor–Sport's purchases from Harley–Davidson during 1995 and 1996 were motorcycles that were manufactured in Wisconsin and assembled and shipped in York, Pennsylvania. (Second Fossas aff. ¶ 49.)

In June, 1996, one of Motor Sport's mechanics, Giherimo Moya, attended a special Spanish language service school sponsored by Harley–Davidson in Milwaukee. Mr. Moya was in Milwaukee for the ten day duration of the service school. (Fink aff. ¶ 13.) Harley–Davidson subsequently made a job offer to Mr. Moya, which Mr. Fossas states that Mr. Moya accepted. (Second Fossas aff. ¶ 13.) Mr. Fossas believes that Mr. Moya is now employed by Harley–Davidson's Milwaukee office. (Fink aff. ¶ 13.)

## II. Analysis

### A. Personal Jurisdiction

Motor Sport first asserts that the court should dismiss Harley–Davidson's complaint pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, which allows for such a dismissal when the court does not have personal jurisdiction over one of the parties.

A federal court sitting in a diversity case has personal jurisdiction over the parties only if a court of the state in which the

federal court sits would have such jurisdiction. *Klump v. Duffus,* 71 F.3d 1368, 1371 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2523, 135 L.Ed.2d 1047 (1996). When determining whether it has personal jurisdiction, a federal court in Wisconsin must resolve two questions. The court first must determine whether the Wisconsin long arm statute, *Wis. Stat.* § 801.05, applies to the non-resident defendant. *Mid–America Tablewares, Inc. v. Mogi Trading Co.,* 100 F.3d 1353, 1358–59 (7th Cir.1996); *see In re All–Star Ins. Corp.,* 110 Wis.2d 72, 76, 327 N.W.2d 648, 650 (Wis.1983). Second, if the long-arm statute does apply, the court then is obliged to decide whether its exercise of jurisdiction over the defendant comports with the due process requirements of the Fourteenth Amendment. *Mid–America Tablewares,* 100 F.3d at 1358–59.

### 1. Wisconsin Long–Arm Statute .

■ The burden rests on the plaintiff to prove that the Wisconsin long-arm statute applies to the nonresident defendant. *State ex rel. N.R.Z. v. G.L.C.,* 152 Wis.2d 97, 104, 447 N.W.2d 533, 535 (Wis.1989). The statute, however, is to be liberally construed in favor of exercising jurisdiction. *Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.,* 18 F.3d 389, 391 (7th Cir.1994); *Lincoln v. Seawright,* 104 Wis.2d 4, 9, 310 N.W.2d 596, 599 (Wis.1981). Furthermore, Wisconsin's statute, unlike some other state's long-arm statutes, is intended to reach to the fullest extent allowed under the due process clause. *Daniel J. Hartwig Assoc., Inc. v. Kanner,* 913 F.2d 1213, 1217 (7th Cir.1990); *N.R.Z.,* 152 Wis.2d at 105, 447 N.W.2d at 535.

■ Harley–Davidson maintains that *Wis. Stat.* § 801.05(1)(d) allows this court to assert personal jurisdiction over Motor Sport. This section of the statute provides that personal jurisdiction exists if the defendant, when the plaintiff commences the action, is "engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." *Wis. Stat.* § 801.05(1)(d). A defendant is engaged in substantial activities within the state when such activities are "systematic and continuous." *Capitol Indem. Corp. v.*

*Certain Lloyds Underwriters,* 487 F.Supp. 1115, 1117 (W.D.Wis.1980).

The plaintiff also alleges that other sections of the state long-arm statute, specifically *Wis. Stat.* §§ 801.05(5)(a),(b),(c) & (d), apply to Motor Sport. An out-of-state defendant is subject to jurisdiction under the statute when the action arises out of a promise made by the defendant to the plaintiff "to pay for services to be performed in this state by the plaintiff," *Wis. Stat.* § 801.05(5)(a), or when the action arises out of services actually performed by the plaintiff for the defendant within the state "if such performance within this state was authorized or ratified by the defendant," *Wis. Stat.* § 801.05(5)(b). Furthermore, the statute exerts jurisdiction over a defendant in an action where the defendant made a promise, to the plaintiff or for the plaintiff's benefit, "to deliver or receive within this state or to ship from this state goods, documents of title, or other things of value," *Wis. Stat.* § 801.05(5)(c), or where the action relates to "goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on the defendant's order or direction," *Wis. Stat.* § 801.05(5)(d).

■ Liberally construing the long-arm statute in favor of finding personal jurisdiction, I find that at least two of the statute's sections apply to Motor Sport. First, the evidence now before the court clearly shows that Motor Sport was engaged in substantial, systematic, and continuous activities within Wisconsin. *See Wis. Stat.* § 801.05(1)(d). For more than twenty years, the defendant has consistently maintained its distributorship relationship with the plaintiff through telephone, mail, and facsimile contacts with, for the most part, Harley–Davidson's Wisconsin office. Motor Sport's lack of physical presence in Wisconsin is not dispositive; to find that it is would be to disregard the way that most modern businesses conduct their everyday activities. In *Stauffacher v. Bennett,* 969 F.2d 455 (7th Cir.), *cert. denied,* 506 U.S. 1034, 113 S.Ct. 814, 121 L.Ed.2d 686 (1992), the court of appeals for the seventh circuit, in declining to exercise jurisdiction over a defendant under this section of Wis-

consin's long-arm statute, noted the necessary conditions to satisfy the statute:

> .... [The defendant] did not solicit, create, nurture, or maintain, whether through personal contacts or long-distance communications, a continuing business relationship with anyone in the state. Had there been such a relationship, then even if no employee or other agent of the credit union had ever set foot in Wisconsin the credit union would have established a sufficient "presence" there to warrant an inference (tenuous as it might seem to be) that First Heritage was benefitting from services provided by the state and could therefore be required, as a quid pro quo, to submit to the jurisdiction of the state's courts.

*Stauffacher,* 969 F.2d at 457–58; *see also Banta Corp. v. Hunter Publ'g Ltd. Partnership,* 915 F.Supp. 80, 83 (E.D.Wis.1995) (finding that the defendant that received 2 percent of its revenue from subscription sales in Wisconsin fell within the purview of *Wis. Stat.* 801.05(1)(d)); *Harley–Davidson, Inc. v. Columbia Tristar Home Video, Inc.,* 851 F.Supp. 1265, 1269 (E.D.Wis.1994) (finding that an out of state defendant that received .008 percent of its fiscal year revenue from sales in Wisconsin was engaged in "substantial and not isolated activities" within the state).

■ I also find that it is proper in this case to exercise jurisdiction under *Wis. Stat.* § 801.05(5)(a), which grants jurisdiction over a defendant when the action arises out of the defendant's promise to pay for services performed by the plaintiff in Wisconsin. There appears to be no dispute between the parties that there was a continuing distributorship agreement between Harley–Davidson and Motor Sport. The existence of this agreement warrants the conclusion that Motor Sport promised to pay for services rendered by Harley–Davidson in Wisconsin, including the manufacturing of motorcycle engines, transmissions, and parts, and the provision of financing and advertising services.

Before this "contract provision" may apply to assert jurisdiction over a defendant, however, the following minimum contacts must exist:

> (i) a claim arising out of a bargaining arrangement made with the defendant by or on behalf of the plaintiff; (ii) a promise or other act of the defendant, made or performed anywhere, which evidences the bargaining arrangement sued upon; and (iii) a showing that the arrangement itself involves or contemplates some substantial connection with the state.

*Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.,* 18 F.3d 389, 393 (7th Cir.1994); *Capitol Fixture & Woodworking Group v. Woodma Distrib., Inc.,* 147 Wis.2d 157, 161–62, 432 N.W.2d 647, 650 (Wis.Ct. App.1988). The first two requirements easily are met since Harley–Davidson's claim for a declaratory judgment evolves from the bargain reached between the two parties, the existence of which, as mentioned above, neither party disputes.

To satisfy the third prong's "substantial connection" requirement, Motor Sport must have contemplated that at least "some" services would occur in Wisconsin. *Federated Rural,* 18 F.3d at 393; *Fabry Glove and Mitten Co. v. Spitzer,* 908 F.Supp. 625, 630 (E.D.Wis.1995). By agreeing with the plaintiff that Harley–Davidson would manufacture motorcycle parts, ship them to Pennsylvania for assembly and for final delivery to Puerto Rico, Motor Sport must have contemplated that the plaintiff would perform substantial services in Wisconsin. *See Fabry Glove,* 908 F.Supp. at 630 (holding that the third prong of the "contract provision" test was satisfied and noting that "[a]fter all, as [the defendant] was no doubt aware, Fabry's headquarters were located in Green Bay, Wisconsin, and its only manufacturing facilities were located in Green Bay and in Marinette, Wisconsin").

Since I have already found that two sections of the Wisconsin long-arm statute apply to Motor Sport, I need not address Harley–Davidson's contention that Motor Sport is also subject to jurisdiction under *Wis. Stat.* § 801.05(5)(b),(c), & (d).

#### 2. *Due Process Clause*

■ Because the Wisconsin long-arm statute applies to Motor Sport, I must examine whether this court's exercise of jurisdiction

over the defendant comports with the due process clause of the Fourteenth Amendment. My finding that Motor Sport falls within the reach of the long-arm statute creates a rebuttable presumption that the due process requirements have been satisfied. *Logan Productions, Inc. v. Optibase, Inc.,* 103 F.3d 49, 52 (7th Cir.1996).

A court may only exercise personal jurisdiction over a defendant, within the confines of due process, when the defendant has "minimum contacts" with that forum, *Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228, 1238–39, 2 L.Ed.2d 1283 (1958), and when such an exercise would not "offend 'traditional notions of fair play and substantial justice,' " *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–78, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528 (1985).

The amount or type of minimum contacts that the defendant must have with the forum state depends on whether the court would be asserting specific or general jurisdiction. Specific jurisdiction is proper when the case itself arises out of or is related to the defendant's contact with the state; general jurisdiction is allowed when the suit does not arise from the defendant's relationship with the state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8 & 9, 104 S.Ct. 1868, 1872 n. 8 & 9, 80 L.Ed.2d 404 (1984). A court may exercise general jurisdiction over a defendant who has "continuous and systematic" contacts with the forum state. *Helicopteros,* 466 U.S. at 416, 104 S.Ct. at 1872–73. The question of whether a court may exert specific jurisdiction is less encompassing—it focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). Thus, when a defendant's relationship with the state is very limited, yet related to the plaintiff's cause of action, a court may still find that the defendant has minimum contacts for the purpose of that case. *See Logan Productions, Inc. v. Optibase, Inc.,* 103 F.3d 49, 52 (7th Cir.1996) ("[A] state may exercise specific jurisdiction when the defendant has a lesser degree of contact with the state, but the litigation arises out of or is related to those contacts."); *4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 1067 (2d ed.1987).

A recent case from the court of appeals for the seventh circuit elaborates on what the nature of the relationship between the defendant, the forum, and the litigation must be in order for a court to exercise specific jurisdiction. In that case, the plaintiff, an Illinois corporation, entered into more than 20 separate contracts with Turner, a Scottish corporation, for the sale of engine parts. *RAR, Inc. v. Turner Diesel Ltd.,* 107 F.3d 1272, 1274–75 (7th Cir.1997). The plaintiff subsequently entered into a different contract with another Scottish corporation for that corporation's sale of engines to RAR. RAR and Turner then agreed that Turner would strip some parts from these engines and ship the rest to RAR in Michigan. The engines were damaged during the shipment, however, and RAR sued Turner for breach of contract. *RAR, Inc.,* 107 F.3d at 1274–75.

The court of appeals for the seventh circuit held that the federal district court sitting in Illinois could not properly exercise specific personal jurisdiction over the defendant. The court, in interpreting when an action "arises out of" or is "related to" the defendant's contact with the forum, said:

> [I]t is only the "dealings between the parties in regard to the disputed contract" that are relevant to minimum contacts analysis.... To be relevant for personal jurisdiction, however, past contacts involving the forum state should either bear on the substantive legal dispute between the parties or inform the court regarding the economic substance of the contract.

*RAR, Inc.,* 107 F.3d at 1278 (quoting *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.,* 75 F.3d 147, 153 (3d Cir. 1996)). The court said that although the defendant had prior contacts with Illinois, those contacts told "the court nothing about RAR's cause of action and shed little light even on the contract generally." *RAR, Inc.,* 107 F.3d at 1279.

Motor Sport argues that any contacts that it may have with Wisconsin are unrelated to

the lawsuit at issue, and thus that the court's exercise of specific jurisdiction would be improper. The reasoning behind the defendant's argument, however, is flawed. Motor Sport contends that "this case does not arise out of services rendered or performed within the state of Wisconsin," but yet that the "dispute object of this complaint arises directly out of the distribution agreement between the parties." The defendant's contention that the case must be a direct result of the services performed by Harley–Davidson in Wisconsin is too narrow. Instead, the exercise of specific jurisdiction is appropriate when the case is substantially related to the reason that the defendant has any contacts with the forum state. *See RAR, Inc.,* 107 F.3d at 1278–79 (describing the holding of that case to require that there be a "substantive relationship" between the defendant's contacts with the forum and the contractual dispute). I find that the reason that Motor Sport has had any contacts with Wisconsin, namely the distribution agreement between it and Harley–Davidson, is substantially related to the plaintiff's action, which asks for a determination of Harley–Davidson's rights and responsibilities under the agreement.

In order for a defendant to have established minimum contacts with a forum, it must have "purposefully availed" itself of that forum in a way that the defendant can reasonably anticipate being sued there. *Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183–84; *see World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). "[ ]it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240. This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183.

The facts of *Burger King,* in which the Court found that the defendant, a Michigan franchisee who had contracted with the franchisor, a Florida corporation, had the requisite minimum contacts with Florida to create

jurisdiction there, are relevant to the case at hand. *See Burger King,* 471 U.S. at 463–68, 105 S.Ct. at 2177–80. The defendant was part-owner of the restaurant franchise in Michigan, had a number of dealings with the franchisor's district office in Michigan, and had never been to Florida. The court nevertheless found that the defendant "deliberately 'reached out beyond' Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization." *Burger King,* 471 U.S. at 479–80, 105 S.Ct. at 2186 (quoting *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)). The court also noted:

> . . . . Moreover, the parties' actual course of dealing repeatedly confirmed that decisionmaking authority was vested in the Miami headquarters and that the district office served largely as an intermediate link between the headquarters and the franchisees. When problems arose . . . the Miami headquarters and the Michigan franchisees carried on a *continuous course of direct communications by mail and by telephone,* and it was the Miami headquarters that made the key negotiating decisions out of which the instant litigation arose.

*Burger King,* 471 U.S. at 480–81, 105 S.Ct. at 2186–87 (emphasis added).

The relationship between Motor Sport and Harley–Davidson is similarly longlasting and continuous. Since 1975, Motor Sport has chosen to sell Harley–Davidson motorcycles and accessories. To do so, it had to order all parts and accessories through the plaintiff's Milwaukee headquarters, it had to communicate with the plaintiff's employees in Milwaukee for several different reasons, and it had to send its payments to Milwaukee. Motor Sport purposefully reached out, negotiated, and reached an agreement with Harley–Davidson. Therefore, its contacts with this state are neither random, fortuitous, nor attenuated.

Once it has been resolved that there are "minimum contacts" with the forum state, the court must also consider if there is a

"compelling case" for the state's exercise of personal jurisdiction that is consistent with traditional notions of fair play and substantial justice. *Burger King,* 471 U.S. at 476–78, 105 S.Ct. at 2184–85. The factors that I must look at in making this determination are Motor Sport's burden in defending the case here, Wisconsin's interests in having the case heard here, Harley–Davidson's interests in obtaining relief, the interests of the judicial system in achieving the most efficient resolution, and the interests of the several states in furthering substantive social policies. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987). "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi,* 480 U.S. at 114, 107 S.Ct. at 1033.

Wisconsin's interest in seeing its resident's disputes resolved at home is obvious, as is Harley–Davidson's interest in obtaining convenient and effective relief in its own state. As for Motor Sport's burden in defending this case in Wisconsin, this does not appear to be a very complicated case that would involve the testimony of witness after witness. As the court of appeals for the seventh circuit recently noted, "it's always burdensome to defend a lawsuit away form home," *Logan Productions,* 103 F.3d at 54, but the burden on Motor Sport is not so heavy that it amounts to a constitutional violation. *See Burger King,* 471 U.S. at 483 n. 25, 105 S.Ct. at 2188 n. 25 ("Absent compelling considerations, . . . a defendant who has purposefully derived commercial benefit from his affiliations in a forum may not defeat jurisdiction there simply because of his adversary's greater net wealth."). Finally, Motor Sport argues that the substantive social policy of Puerto Rico's resolving this action, which according to the defendant is governed by Puerto Rico law, favors the dismissal of this action. The defendant has not demonstrated, though, how Puerto Rico's alleged interest might render jurisdiction in Wisconsin unconstitutional. *See Burger King,* 471 U.S. at 483, 105 S.Ct. at 2187–88.

Therefore, I find that this court is able to exert personal jurisdiction over Motor Sport and should dismiss Motor Sport's motion to dismiss for lack of personal jurisdiction.

### B. Change of Venue

■ Motor Sport next argues that this case should be dismissed because venue is improper, or, in the alternative, that it should be transferred to the venue of Puerto Rico.

28 U.S.C. § 1391(a)(2) provides that venue is proper in a diversity action when the plaintiff brings the case in a district in which a "substantial part of the events or omissions giving rise to the claim occurred." The sum of Motor Sport's argument, however, appears to be that since a "substantial part" of the activities occurred in Puerto Rico, jurisdiction in Wisconsin improper. This argument ignores the fact that a "substantial part" of the events or omissions can occur in more than one place, and thus, that venue can be proper in more than one district. *See Enviroplan, Inc. v. Western Farmers Elec. Coop.,* 900 F.Supp. 1055, 1062 (S.D.Ind.1995). For the reasons discussed earlier in this decision, it is clear that a substantial part of the activities that gave rise to this action, namely the continuation of the distribution relationship between Harley–Davidson and Motor Sport, occurred in Wisconsin. Motor Sport's motion, pursuant to Rule 12(b)(3), Federal Rules of Civil Procedure, to dismiss this action for improper venue, will therefore be denied.

The statute that allows for the transfer of a case from one federal district court to another, 28 U.S.C. § 1404(a), provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The court has wide discretion in deciding whether to grant a motion for transfer. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986); *Banta Corp. v. Hunter Publ'g Ltd. Partnership,* 915 F.Supp. 80, 84 (E.D.Wis.1995). The court must look at the three factors set out in 28 U.S.C. § 1404(a)—convenience of the parties, convenience of the witnesses, and the interests of justice—that are "best viewed as placeholders for a broader set of

considerations, the contours of which turn upon the particular facts of each case," *Coffey*, 796 F.2d at 219 n. 3. Motor Sport has the burden of showing that the district of Puerto Rico is a "clearly more convenient" forum. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir.1989) (citing *Coffey*, 796 F.2d at 219–20). Furthermore, the court must give weight to the plaintiff's choice of this forum. *Federal Deposit Ins. Corp. v. Citizens Bank & Trust Co.*, 592 F.2d 364, 368 (7th Cir.), *cert. denied*, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979); *Banta Corp.*, 915 F.Supp. at 84.

The factors that could outweigh the plaintiff's choice of forum—the "interests of justice" supporting the transfer, or a great inconvenience to the defendant or to the witnesses—are not present in this case. Motor Sport has not argued that it would be greatly inconvenient for its witnesses to travel to Wisconsin. The fact that the defendant's distributorship is in Puerto Rico is not a cogent reason for a transfer. Finally, this action would not necessarily be resolved more efficiently in Puerto Rico. According to the Federal Court Management Statistics (1995), the number of pending cases per judge is 393 in the district of Puerto Rico and 299 in the eastern district of Wisconsin. It is not obvious that the interests of justice would be served by transferring this case to a district in which the action would most likely be resolved in the same amount of time. Motor Sport's motion to transfer venue, pursuant to 28 U.S.C. § 1404(a), will be denied.

3. *Failure to State a Claim*

Motor Sport's last argument is that Harley–Davidson's complaint should be dismissed for failure to state a claim, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. Specifically, the defendant contends that because the plaintiff's complaint "implicitly" invokes Wisconsin law, and because Puerto Rico is the applicable law, the claim should be dismissed.

Harley–Davidson's response—that choice of law doctrine will govern this dispute—is correct. This action for a declaratory judgment, provided for by Rule 57, Federal Rules of Civil Procedure and 28 U.S.C. § 2201,

should not be dismissed for a failure to state a claim just because it is unclear at this early juncture which forum's laws apply. Therefore, I will deny Motor Sport's motion to dismiss, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

### ORDER

Therefore, IT IS ORDERED that Motor Sport's motion to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, be and hereby is denied, with costs.

IT IS ALSO ORDERED that Motor Sport's motion to dismiss for improper venue, pursuant to Rule 12(b)(3), Federal Rules of Civil Procedure, be and hereby is denied, with costs.

IT IS ALSO ORDERED that Motor Sport's motion to transfer venue to the district of Puerto Rico, pursuant to 28 U.S.C. § 1404(a), be and hereby is denied, with costs.

IT IS FURTHER ORDERED that Motor Sport's motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), be and hereby is dismissed, with costs.

IT IS FURTHER ORDERED that Harley–Davidson's motions for leave to conduct discovery on the jurisdictional issues and motion for extension of time to respond to the defendant's motion to dismiss be and hereby are dismissed as moot and without costs.

IT IS FURTHER ORDERED that Motor Sport be and hereby is directed to serve and file a responsive pleading within fourteen (14) days of the date of this order.